### THE MAX MORRIS: Morris, Claimant.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 44. Submitted May 2, 1890. — Decided November 17, 1890.

Where a person is injured on a vessel, through a marine tort arising partly
from the negligence of the officers of the vessel and partly from his
own negligence, and sues the vessel in Admiralty, for damages for his
injuries, he is not debarred from all recovery because of the fact that
his own negligence contributed to his injuries.

Whether, in such case, the decree should be for exactly one-half of the
damages sustained, or might, in the discretion of the court, be for a
greater or less proportion of such damages, *quære*.

THE case, as stated by the court, was as follows:

This was a suit in Admiralty, brought in the District Court
of the United States for the Southern District of New York,
by Patrick Curry against the steamer Max Morris.

The libel alleged that on the 27th of October, 1884, the
libellant was lawfully on board of that vessel, being employed
to load coal upon her by the stevedore who had the contract
for loading the coal; that, on that day, the libellant, while on
the vessel, fell from her bridge to the deck, through the negli-

gence of those in charge of her, in having removed from the bridge the ladder usually leading therefrom to the deck, and in leaving open, and failing to guard, the aperture thus left in the rail on the bridge; that the libellant was not guilty of negligence; and that he was injured by the fall and incapacitated from labor. He claimed $3000 damages.

The answer alleged negligence on the part of the libellant and an absence of negligence on the part of the claimant.

The District Court, held by Judge Brown, entered a decree in favor of the libellant for $150. damages, and $32.33 as one-half of the libellant's costs, less $47.06 as one-half of the claimant's costs, making the total award to the libellant $135.27. The opinion of the District Judge is reported in 24 Fed. Rep. 860. It appeared from that that the judge charged to the libellant's own fault all his pain and suffering and all mere consequential damages, and charged the vessel with his wages, at $2 per day, for 75 working days, making $150.

The claimant appealed to the Circuit Court, on the ground that the libel should have been dismissed. It was stipulated between the parties that the facts as stated in the opinion of the District Judge should be taken as the facts proved in the case, and that the appeal should be heard on those facts. Judge Wallace, who heard the case on appeal in the Circuit Court, delivered an opinion, in August, 1886, which is reported in 28 Fed. Rep. 881, affirming the decree of the District Court. No decree was made on that decision, but the case came up again in the Circuit Court on the 14th of March, 1887, the court being held by Mr. Justice Blatchford and Judge Wallace, when a certificate was signed by them stating as follows: "The libellant was: a longshoreman, a resident of the city and county of New York, and was, at the time when the said accident occurred, employed as longshoreman, by the hour, by the stevedore having the contract to load coal on board the steamship Max Morris. The injuries to the libellant were occasioned by his falling through an unguarded opening in the rail on the after end of the lower bridge. The Max Morris was a British steamship, hailing from Liverpool, England. The defendant contends, as a matter of defence to said libel,

that the injuries complained of by libellant were caused by his own negligence. The libellant contends that the injuries were occasioned entirely through the fault of the vessel and her officers. The court finds, as a matter of fact, that the injuries to the libellant were occasioned partly through his own negligence and partly through the negligence of the officers of the vessel. It now occurs, as a question of law, whether the libellant, under the above facts, is entitled to a decree for divided damages. On this question the opinions of the judges are in conflict." On motion of the claimant, the question in difference was certified to this court, and a decree was entered by the Circuit Court affirming the decree of the District Court and awarding to the libellant a recovery of $135.27, with interest from the date of the decree of the District Court, and $26.30 as the libellant's costs in the Circuit Court, making a total of $172. From that decree the claimant has appealed to this court. Rev. Stat. §§ 652, 693; *Dow* v. *Johnson*, 100 U. S. 158.

*Mr. Wilhelmus Mynderse* and *Mr. William Allen Butler* for Morris, claimant and appellant.

Whether the accident was due solely to the fault of the libellant, or whether his fault merely contributed thereto, the libel should be dismissed.

The contributory fault of the libellant is established by the facts. The rule as invariably applied by Admiralty Courts in this class of cases until the recent decision of the *Explorer*, 20 Fed. Rep. 135, 139, by Judge Pardee, in the Fifth Circuit, has been the wholesome rule that the libellant cannot recover when his own negligence has contributed to the accident. Such is the rule of the common law. And the civil law from which the principles of the admiralty law are freely drawn is on this point in accord with the common law. Wharton on Negligence, § 300.

Judge Pardee finds his sole foundation for his decision in the case of the *Explorer* in certain *dicta* of Justice Story in the case of *Marianna Flora*, 11 Wheat. 1, decided by the

Supreme Court in 1826. The *Marianna Flora* was a prize case, in which the captured vessel was declared by the District Court " no prize," and the matter under the consideration of the Supreme Court was whether the captured vessel should recover damages for her arrest. The Supreme Court denied her claim for damages upon the ground that the circumstances attending the seizure were, through the indiscretions of the *Marianna Flora*, such as to justify the commander of the cruiser, in the fair exercise of his judgment, in making the seizure. In effect the Supreme Court said : the *Marianna Flora* having contributed to the seizure by her own negligence, cannot recover damages. But in the course of their opinion they made certain *dicta* respecting the power of the Court to give or to withhold damages, such as " in cases of marine torts courts of admiralty are in the habit of giving or withholding damages upon enlarged principles of justice and equity," and " they have exercised a conscientious discretion upon the subject," which Judge Pardee has construed in such manner as to sustain his decision.

Though the *Marianna Flora* was decided sixty years ago, it had never been deemed to refer to other than prize cases. It is significant that in every case in which a decree has been given in favor of a landsman for personal injuries, there is an express finding that the libellant was free from any fault. " The libellant was in no manner negligent or in fault, whereby he contributed to his said injury." *Leathers* v. *Blessing*, 105 U. S. 626. " The libellant was guilty of no negligence " (Judge Benedict). *The Calista Hawes*, 14 Fed. Rep. 493. " The libellant was not in any degree in fault for the falling of the dunnage " (Judge Benedict). *The Kate Cann*, 2 Fed. Rep. 241, affirmed, 8 Fed. Rep. 719. " The proofs do not justify an inference that the libellant was negligent " (Judge Wallace). *The Rheola*, 19 Fed. Rep. 926. Judge Deady expressly held " contributory negligence is a defense to the action," the claim being prosecuted in the Admiralty Court by a libel *in personam*. *Holmes* v. *Oregon & Colorado Railway*, 5 Fed. Rep. 523, 528. And again, Judge Deady held : " Admitting the negligence of the mate, and that the master or owner and the vessel are liable

therefor, still *if the negligence of the libellant substantially contributed to produce the injury,* he could not recover damage therefor." *The Chandos,* 4 Fed. Rep. 645, 649. Judge Blatchford has stated the rule as follows: " The owner of the vessel is liable *in personam* and the vessel is liable *in rem* for injuries done to person or property by the negligence of the master and crew of the vessel, *only where the owner would, under the same circumstances,* be liable in a suit at common law." *The Germania,* 9 Ben. 356. And in a case decided two months later than the *Explorer,* Judge Pardee seems to have modified his novel views. He says: " Nor in the admiralty should one, as a general rule, be compensated in damages who has, by his own fault, contributed to bring about his own injury." *The E. B. Ward, Jr.,* 20 Fed. Rep. 702, 704.

The admiralty rule of division of damages, applicable to collision cases, has never been applied to cases of personal injuries.

The rule of dividing damages in case of mutual fault, applies only to collision cases, and arose probably from the fact that, in such cases, damages were sustained by both parties; and that the collision occurred, not through the personal negligence of either of the ship-owners, but through the negligence of their servants.

Cleirac calls it a *judicium rusticum* (*Us et Coutumes de la Mer*), and his commentator, Mr. Bell, translates his words as follows: " This rule of division is a rustic sort of determination and such as arbiters and amicable compromisers of disputes commonly follow where they cannot discover the motives of the parties when they are faulty on both sides," Bell's Comm. 5th ed. 581.

This rule was not recognized by the Supreme Court in collision cases until 1854. Up to that time, apparently, collisions in which both vessels were in fault, were not as common as they are now-a-days, for Judge Nelson said: " It becomes necessary to settle the rule of damages in a case where both vessels are in fault. *The question, we believe, has never until now come before the Court for decision.* The rule that prevails in the District and Circuit Courts, we understand, has

been to divide the loss. This seems now to be the well-settled rule in the English admiralty. . . . *Under the circumstances usually attending these disasters*, we think the rule dividing the loss the most just and equitable." *The Schooner Catherine*, 17 How. 173. *Snow* v. *Carruth*, 1 Sprague, 324, is in no way pertinent. There was no suggestion there of contributory negligence.

Not only has the wholesome doctrine that the contributory negligence of the libellant defeats an action in the Admiralty Court for personal injuries been uniformly observed until Judge Pardee's decision in the *Explorer*, but the more severe rule that a servant cannot recover for injuries sustained through the negligence of a fellow servant has been accepted and enforced. Judge Lowell applied it in the Massachusetts. Circuit. *The Victoria*, 13 Fed. Rep. 43. And in the Southern District of New York, Judge Brown followed the rule to its extremest limit. *The Harold*, 21 Fed. Rep. 428. And the municipal or common law doctrine was also applied by the Circuit Court in New York, affirming, *The Edith Godden*, 23 Fed. Rep. 43. It is inconsistent to say that a servant who has been injured through his own negligence can recover half his damages, while he who has been without fault and has been injured through the negligence of his fellow servant can recover nothing.

The learned Circuit Judge (Judge Wallace) who wrote for affirmance of the decree of the District Court apparently doubted the correctness of the rule adopted by Judge Pardee in the *Explorer*, 20 Fed. Rep. 135, and followed by Judge Brown in the District Court. He held himself bound, however, by the decision of this Court in *Atlee* v. *The Packet Co.*, 21 Wall. 389. But the language of the court, in that case (p. 395), after adverting to the fact that this action might have been brought in a common-law court instead of the Admiralty Court, is: "In the common-law court the defendant must pay all the damages or none. . . . By the rule of the admiralty court, where there has been such contributory negligence, or, in other words, when both have been in fault, the entire damages *resulting from the collision* must be equally

divided between the parties." The rule of apportionment was recognized only as a rule applicable to collisions.

The decree cannot be sustained by the rule that when a seaman falls sick or sustains injury in the service of his vessel certain responsibilities as to care and attention devolve upon the vessel. *The City of Alexandria*, 17 Fed. Rep. 390.

The learned District Judge heard argument upon this point, but very justly held that the rule was not applicable.

The rule, as respects *seamen*, is a proper one, though it seems that it is not enforceable if the sickness or injury of the seaman is occasioned by his own fault. *Curtis' Rights and Duties of Seamen*, 109.

Seamen may be injured or fall sick in a far distant foreign port, and it would be inhuman to leave them there without care.

There are even statutory provisions for the payment of their expenses home and for their support in hospitals.

But the responsibility of the ship extends only to the end of the voyage for which the seaman was shipped, or until the seaman reaches his home port. *The Atlantic*, Abbott's Admiralty, 451; *Nevitt* v. *Clarke*, Olcott, 316; *The Ben Flint*, 1 Abbott, U. S. 126. No such responsibility rests upon the *Max Morris* with reference to the libellant. The reason for the rule does not exist as to him. He was injured at his home. He was not in a foreign port. He was treated and cured at a public hospital. His engagement as a longshoreman extended only from hour to hour.

Even a seaman has no claim upon his ship for a period beyond the time for which he has shipped or contracted for. *The Atlantic*, Abbott's Adm. 451.

*Mr. James A. Patrick* for Curry, libellant and appellee.

MR. JUSTICE BLATCHFORD, after stating the case as above reported, delivered the opinion of the court.

The question discussed in the opinions of Judge Brown and Judge Wallace, and presented to us for decision, is whether

the libellant was debarred from the recovery of any sum .of money, by reason of the fact that his own negligence contributed to the accident, although there was negligence also in the officers, of the vessel. The question presented by the certificate is really that question, although stated in the certificate to be whether the libellant, under the facts presented, was entitled to a decree "for divided damages." It appears from the opinion of the District Judge that he imposed upon the claimant "some part of the damage" which his concurrent negligence occasioned, while it does not appear from the record that the award of the $150 was the result of an equal division of the damages suffered by the libellant, or, a giving to him of exactly one-half, or of more or less than one-half, of such damages.

The particular question before us has never been authoritatively passed upon by this court, and is, as stated by the District Judge in his opinion, whether, in a court of admiralty, in a case like the present, where personal injuries to the libellant arose from his negligence concurring with that of the vessel, any damages can be awarded, or whether the libel must be dismissed, according to the rule in common law cases.

The doctrine of an equal division of damages in admiralty, in the case of a collision between two vessels, where both are guilty of fault contributing to the collision, had long been the rule in England, but was first established by this court in the case of *The Schooner Catherine* v. *Dickinson*, 17 How. 170, and has been applied by it to cases where, both vessels being in fault, only one of them was injured, as well as to cases where both were injured, the injured vessel, in the first case, recovering only one-half of its damages, and, in the second case, the damages suffered by the two vessels being added together and equally divided, and the vessel whose damages exceeded such one-half recovering the excess against the other vessel. In the case of *The Schooner Catherine* v. *Dickinson*, (*supra*,) both vessels being held in fault for the collision, it was said by the court, speaking by Mr. Justice Nelson, p. 177, that the well-settled rule in the English admiralty was "to divide the loss," and that "under the circumstances usually

attending these disasters" the court thought "the rule dividing the loss the most just and equitable, and as best tending to induce care and vigilance on both sides, in the navigation."

This rule, recognized as one of an equal division of the loss, has been applied by this court in the following cases: *Rogers* v. *Steamer St. Charles*, 19 How. 108; *Chamberlain* v. *Ward*, 21 How. 548; *The Washington*, 9 Wall. 513; *The Sapphire*, 11 Wall. 164; *The Ariadne*, 13 Wall. 475; *The Continental*, 14 Wall. 345; *Atlee* v. *Packet Co.*, 21 Wall. 389; *The Teutonia*, 23 Wall. 77; *The Sunnyside*, 91 U. S. 208; *The America*, 92 U. S. 432; *The Alabama*, 92 U. S. 695; *The Atlas*, 93 U. S. 302; *The Juniata*, 93 U. S. 337; *The Stephen Morgan*, 94 U. S. 599; *The Virginia Ehrman*, 97 U. S. 309; *The City of Hartford*, 97 U. S. 323; *The Civilta*, 103 U. S. 699; *The Connecticut*, 103 U. S. 710; *The North Star*, 106 U. S. 17; *The Sterling*, 106 U. S. 647; and *The Manitoba*, 122 U. S. 97.

It may be well to refer particularly to some of these cases, which have a bearing upon the present question. In the case of *The Washington*, two vessels were held in fault for a collision which resulted in injuries to an innocent passenger on one of them, who proceeded against both in the same libel. This court held that the damages to the passenger ought to be apportioned equally between the two vessels, with a reservation of a right in the libellant to collect the entire amount from either of them, in case of the inability of the other to respond for her portion. In that case, the rule of the equal division of damages was extended to damages other than those sustained by either or both of the vessels in fault.

In *Atlee* v. *Packet Co.*, a barge owned by the libellant was sunk by striking a stone pier owned by the respondent, built in the navigable part of the Mississippi River. Both parties being found in fault by the District Court, that court divided the damages sustained by the libellant, and rendered a decree against the owner of the pier for one-half of them. The Circuit Court held the owner of the pier to be wholly in fault, and decreed the entire damage against him. He having appealed, this court, after two hearings of the case, reversed the decree of the Circuit Court and reinstated that of the

District Court. In the opinion of this court, delivered by Mr. Justice Miller, the case is treated as one of collision. The pier having been placed by the respondent in the navigable water of the Mississippi River without authority of law, this court held him to be responsible for the damages sustained by the libellant from the striking of the pier by the barge. It held also that there was negligence on the part of the barge, and said (p. 395): " But the plaintiff has elected to bring his suit in an admiralty court, which has jurisdiction of the case, notwithstanding the concurrent right to sue at law. In this court the course of proceeding is in many respects different and the rules of decision are different. The mode of pleading is different, the proceeding more summary and informal, and neither party has a right to trial by jury. An important difference as regards this case is the rule for estimating the damages. In the common law court the defendant must pay all the damages or none. If there has been on the part of the plaintiffs such carelessness or want of skill as the common law would esteem to be contributory negligence, they can recover nothing. By the rule of the Admiralty Court, where there has been such contributory negligence, or, in other words, when both have been in fault, the entire damages resulting from the collision must be equally divided between the parties. This rule of the admiralty commends itself quite as favorably in its influence in securing practical justice as the other ; and the plaintiff who has the selection of the forum in which he will litigate cannot complain of the rule of that forum." This court, therefore, treated the case as if it had been one of a collision between two vessels.

The case of *The Alabama* was like that of *The Washington,* where an innocent party recovered damages against two vessels, both of which were in fault in a collision. In that case, it is said in the opinion of the court, delivered by Mr. Justice Bradley (p. 697), that " the moiety rule has been adopted for a better distribution of justice between mutual wrongdoers ; and it ought not to be extended so far as to inflict positive loss on innocent parties."

The case of *The Atlas* was that of a suit against the Atlas

by an insurance company for the loss of a canal-boat and her cargo while she was in tow of a tug, through a collision between the Atlas and the tug. The tug was not sued. The District and Circuit Courts, in view of the fact that the collision was caused by the mutual fault of the Atlas and the tug, decreed to the libellant, against the Atlas, one-half of its damages. This court held that, as the owner of the cargo which was on board of the canal-boat was not in fault, the libellant was entitled to recover the entire amount of its damages from the Atlas, the tug not having been brought in as a party to the suit. By Rule 59 in Admiralty, promulgated by this court, March 26, 1883, 112 U. S. 743, the claimant or respondent in a suit for damage by collision may compel the libellant to bring in another vessel or party alleged to have been in fault.

The case of *The Juniata* is worthy of attention. In that case, one Pursglove, the owner of a steam-tug, filed a libel against the Juniata to recover for damage sustained by the tug by a collision between it and the Juniata, and also damages for personal injuries to himself. The District Court held both vessels to have been in fault, and made a decree of $10,000 in favor of Pursglove, for one-half of his damages. This decree was affirmed by the Circuit Court and by this court. It is quite evident from the report of the case that damages were awarded to Pursglove for his personal injuries, although his tug was held to have been in fault.

Some of the cases referred to show that this court has extended the rule of the division of damages to claims other than those for damages to the vessels which were in fault in a collision.

In England, the common law rule that a plaintiff who is guilty of contributory negligence can recover nothing, was made by statute to yield to the admiralty rule in respect to damages arising out of a collision between two ships, by subdivision (9) of section 25 of chap. 66 of 36 & 37 *Vict.*, being the Judicature Act of August 5, 1873, L. R. 8 Stat. 321, which provides as follows: "(9) In any cause or proceeding for damages arising out of a collision between two ships, if both ships shall

be found to have been in fault, the rules in force in the Court
of Admiralty, so far as they have been at variance with the
rules in force in the Courts of Common Law, shall prevail."
The same provision was enacted in the same language by sub-
division (9) of section 28 of chap. 57 of 40 & 41 *Vict.*, being
the Judicature Act in relation to Ireland, of August 14, 1877.
L. R. 12 Stat. 362.

The Admiralty rule of the division of damages was laid
down by Sir William Scott, in 1815, in *The Woodrop-Sims*, 2
Dodson, 83, 85, where he says that if a loss occurs through a
collision between two vessels, where both parties are to blame,
the rule of law is " that the loss must be apportioned between
them, as having been occasioned by the fault of both of them."
This rule was approved by the House of Lords, on an appeal
from Scotland, in *Hay* v. *Le Neve*, 2 Shaw, 395, in 1824.

The rule of the equal apportionment of the loss where both
parties were in fault would seem to have been founded upon
the difficulty of determining, in such cases, the degree of neg-
ligence in the one and the other. It is said by Cleirac (*Us et
Coutumes de la Mer*, p. 68) that such rule of division is a rustic
sort of determination, and such as arbiters and amicable com-
promisers of disputes commonly follow, where they cannot
discover the motives of the parties, or when they see faults on
both sides.

As to the particular question now presented for decision,
there has been a conflict of opinion in the lower courts of the
United States. In the case of *Peterson* v. *The Chandos*, 4 Fed.
Rep. 645, 649, in the District Court for the District of Oregon,
which was a libel in admiralty against a vessel, for a personal
injury, it was said by Judge Deady, that the libellant could
not recover for an injury caused by his own negligence, which
contributed to the result, even though the vessel was in fault.
The same rule was recognized by him, in the same court, in a
suit in admiralty, in *Holmes* v. *Oregon Railway*, 5 Fed. Rep.
523, 538,[1] and by Judge Hughes, in the District Court for the
Eastern District of Virginia, in *The Manhasset*, 19 Fed. Rep. 430.

On the other hand, Judge Pardee, in the Circuit Court for

---

[1] In *Olsen* v. *Flavel*, 34 Fed. Rep. 477, Judge Deady distinctly held the law
to be in accordance with the decision in the present case.

the Eastern District of Louisiana, in *The Explorer*, 20 Fed. Rep. 135, and *The Wanderer*, 20 Fed. Rep. 140, cases in admiralty where the libellant sued for personal injuries, and he and the vessel were both held in fault, laid it down as a rule, that, in cases of marine torts, courts of admiralty could exercise a conscientious discretion, and give or withhold damages upon enlarged principles of justice and equity. In the first of those cases, the court allowed to the libellant $280 for the loss of 40 days' time, at $7 a day, and the sum of $40 paid by him for his admission to a hospital, and the costs of the case, as the vessel's share of the expenses resulting from the injury to which the vessel contributed through the negligence of her master and officers. In the other case, it was held that, while the libellant could not be rewarded for his negligence at the expense of the vessel, she should be held responsible for her negligence, to the extent of paying for the direct care, attention, medical services and expenses required for the libellant. These last two cases proceed upon the same principle that appears to have been adopted by the District and Circuit Courts in the present case; and the same view was applied by the District Court for the Eastern District of New York, in *The Truro*, 31 Fed. Rep. 158; and by the District Court for the Eastern District of Virginia, in *The Eddystone*, 33 Fed. Rep. 925. This principle, it is contended, is sanctioned by the language used by this court in *The Marianna Flora*, 11 Wheat. 1, 54: " Even in cases of marine torts, independent of prize, courts of admiralty are in the habit of giving or withholding damages upon enlarged principles of justice and equity, and have not circumscribed themselves within the positive boundaries of mere municipal law;." and in *The Palmyra*, 12 Wheat. 1, 17: " In the admiralty, the award of damages always rests in the sound discretion of the court, under all the circumstances."

The rule of giving one-half of the damages has been applied by the District and Circuit Courts in the Southern District of New York, in cases where a boat and her cargo were lost or damaged through negligence on the part of a steam-tug which towed the boat, where there was fault also on the part of the

boat. Those were not cases of collision, and there was no damage to the steam-tug, and she alone was sued for the loss. Such cases were those of *The William Murtaugh*, 3 Fed. Rep. 404, and 17 Fed. Rep. 260; *The William Cox*, 3 Fed. Rep. 645, affirmed by the Circuit Court, 9 Fed. Rep. 672; *Connolly* v. *Ross*, 11 Fed. Rep. 342; *The Bordentown*, 16 Fed. Rep. 270. Also, in cases where the vessel towed was held to be in fault for not being in proper condition, *Phila. Railroad Co.* v. *New England Transportation Co.*, 24 Fed. Rep. 505; and where a boat was injured by striking the bottom of a slip, in unloading at the respondent's elevator, the boat herself being also in fault, *Christian* v. *Van Tassel*, 12 Fed. Rep. 884; and where the vessel towed was old and unseaworthy, *The Syracuse*, 18 Fed. Rep. 828; *The Reba*, 22 Fed. Rep. 546. In *Snow* v. *Carruth*, 1 Sprague, 324, in the District Court for the District of Massachusetts, damage to goods carried by a vessel on freight was attributable partly to the fault of the carrier and partly to the fault of the shipper; and, it being impossible to ascertain for what proportion each was responsible, the loss was divided equally between them.

All these were cases in admiralty, and were not cases of collision between two vessels. They show an amelioration of the common law rule, and an extension of the admiralty rule in a direction which we think is manifestly just and proper. Contributory negligence, in a case like the present, should not wholly bar recovery. There would have been no injury to the libellant but for the fault of the vessel; and while, on the one hand, the court ought not to give him full compensation for his injury, where he himself was partly in fault, it ought not, on the other hand, to be restrained from saying that the fact of his negligence should not deprive him of all recovery of damages. As stated by the District Judge in his opinion in the present case, the more equal distribution of justice, the dictates of humanity, the safety of life and limb and the public good, will be best promoted by holding vessels liable to bear some part of the actual pecuniary loss sustained by the libellant, in a case like the present, where their fault is clear, provided the libellant's fault, though evident, is neither wilful,

nor gross, nor inexcusable, and where the other circumstances present a strong case for his relief. We think this rule is applicable to all like cases of marine tort founded upon negligence and prosecuted in admiralty, as in harmony with the rule for the division of damages in cases of collision. The mere fact of the negligence of the libellant as partly occasioning the injuries to him, when they also occurred partly through the negligence of the officers of the vessel, does not debar him entirely from a recovery.

The necessary conclusion is, that the question whether the libellant, upon the facts found, is entitled to a decree for divided damages, must be answered in the affirmative, in accordance with the judgment below. This being the only question certified, and the amount in dispute being insufficient to give this court jurisdiction of the whole case, our jurisdiction is limited to reviewing this question. *Chicago Union Bank* v. *Kansas City Bank*, 136 U. S. 223. Whether, in a case like this, the decree should be for exactly one-half of the damages sustained, or might, in the discretion of the court, be for a greater or less proportion of such damages, is a question not presented for our determination upon this record, and we express no opinion upon it.

*Decree affirmed.*