## THE J. & J. McCARTHY.

### STYFFE v. THE J. & J. McCARTHY.[1]

(District Court, S. D. New York. April 1, 1893.)

SHIPPING—PERSONAL INJURIES—SHIFTING HAWSER OF TOW—LIABILITY OF TUG. Libelant, master of a canal boat in tow of defendant tug, lost two fingers by getting them caught in the loop of his hawser while shifting it from the port cleat to the forward bitts. On conflicting evidence the court found that the shifting of the hawser by libelant was in response to an authorized hail from the tug, and that the accident was due to the premature starting up of the tug. *Held*, that the tug was liable; but as the evidence also indicated that the libelant carelessly and unnecessarily exposed his fingers in the loop of the hawser while pushing it down on the bitts, *held*, that libelant was also negligent, but should recover $450. The Max Morris, 11 Sup. Ct. Rep. 29, 137 U. S. 1.

In Admiralty. Libel by Wm. T. Styffe against the steam tug J. & J. McCarthy for personal injuries. Decree for libelant.

Hyland & Zabriskie, for libelant.
McCarthy & Berier, for respondent.

BROWN, District Judge. On the 19th of July, 1892, between 2 and 3 o'clock in the afternoon, the libelant, who was the captain in charge of the canal boat Fred Fassbender, which was going around the Battery in tow of the tug J. & J. McCarthy on a hawser about 40 or 50 feet long, lost two of the fingers of his right hand by getting them smashed in changing the hawser from the port cleat to the forward bitts. The tow had been taken from the Wallabout by two hawsers running to the port and starboard sides. Off pier 5 or 6, East river, the starboard hawser either slipped or parted, and the canal boat, being held by the port line only, began to take a sheer to starboard. The libelant was at that time near the stern of his boat. Seeing the sheer, he ran forward, saw that the starboard hawser was gone, and, according to his testimony, was hailed by one of the men on the stern of the tug, who told him to shift the hawser from the port cleat, and put it over the bitts near the stem; that he attempted to do so; and that while putting the loop which formed the end of the port hawser over the bitts, the tug started up, and that his fingers were thereby caught between the hawser and one of the bitts about six inches from its top. The libelant was but 21 years of age, and had been on board the canal boat as captain for only a short time.

The witnesses for the tug all testified that no order was given from the tug to the libelant to change the port hawser. The pilot and engineer testified that the tug did not start up. The deck hand and the cook, who were on the stern of the tug, contradicted each other about the starboard hawser; while the cook says the tug did start up and he agrees with the libelant in assigning that as the reason why his fingers got caught.

[1]Reported by E. G. Benedict, Esq., of the New York bar.

Upon the contradicting testimony I must find in accordance with the reasonable probabilities of the case. The libelant had no business to change the hawser, except on orders from the tug; and there is not the least probability that he would do so. I have no doubt that he did receive a hail to change the hawser, as he testifies; and that this hail was in some way either directed by the pilot of the tug, or was known and acquiesced in by him. It was the proper and natural thing to do; while the pilot's account of what he was doing, or rather was not doing, seems to me wholly improbable. I cannot give full credence to the testimony of the witnesses on the McCarthy as to what was done or not done, on account of the contradictions between them, as well as the improbabilities arising from the situation. The pilot says that for a considerable period, namely, while the libelant ran forward, got off the port hawser and got hurt, he was not looking aft, and did not see what was going on; though he knew the starboard hawser was gone and that the canal boat was sheering to starboard; but he says he was waiting for the boats to come towards each other. He says he ordered the starboard hawser hauled in; while both deck hands deny any such order.

I am persuaded that the truth of the matter is that the port hawser was shifted on the authorized hail from the tug by the pilot's direction; that the pilot knew what was doing, and started up a little sooner than he should have done.

I cannot wholly acquit the libelant, however, of some negligence or want of reasonable precaution. The loop or eye of the hawser was some three feet in circumference. There would have been no difficulty in throwing it over the bitts, but for the weight of what was hanging over in the water. I have no doubt the hawser was slackened by stopping the engines, as the pilot and engineer testify. The libelant says that he was pushing the hawser down the bitts when his fingers were caught. Allowing for some probable difficulty in getting the hawser over the bitts, arising from the drag of the hawser, which necessitated some pulling back all the time, still I cannot conceive how his fingers could be caught in the way he describes, except by a careless and unnecessary exposure of his fingers in the loop of the hawser; since by the use of both hands in pulling back, he could easily have kept his fingers away from the bitts. The tug, however, had no right to start up, under such circumstances, until a signal was given that all was ready for the start, and no such signal is claimed to have been given. Under these circumstances I award him but $450. The Max Morris, 137 U. S. 1, 11 Sup. Ct. Rep. 29.