**Thomas B. BRYANT, to his own Use and to the Use of Liberty Mutual Insurance Company, Appellant,**

**v.**

**PARTENREEDEREI–ERNEST RUSS and Oriole Ship Ceiling Co., Inc.,** **Appellees.**

**No. 9747.**

United States Court of Appeals Fourth Circuit.

Argued March 3, 1965.

Decided Nov. 3, 1965.

Boreman, Circuit Judge, dissented.

Maurice J. Pressman, Baltimore, Md. for appellant, and Randall C. Coleman, Baltimore, Md. (Southgate L. Morison and Ober, Williams & Grimes, Baltimore, Md. on the brief) for appellee Partenreederei-Ernest Russ.

David R. Owen, Baltimore, Md., (Semmes, Bowen & Semmes, Baltimore, Md., on the brief), for appellee Oriole Ship Ceiling Co., Inc.

Before SOBELOFF, BOREMAN and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

This case is here on appeal for the second time. On the first appeal we were concerned with the issue of liability. Finding the vessel on which Bryant was injured while working as a ship ceiler to be unseaworthy, this court set aside the judgment entered by the District Court

exonerating the shipowner, Partenreederei-Ernest Russ, of liability and remanded the case "with directions to enter judgment for the plaintiff [Bryant] in an amount to be determined by the said district court." Bryant v. Partenreederei-Ernest Russ, 330 F.2d 185, 190 (4 Cir. 1964). On remand, following arguments by counsel based on evidence already in the record, the District Court found that $24,000 would adequately compensate Bryant for the damages he had sustained, but that Bryant's own negligence had contributed to his injuries to the extent of fifty per cent (50%). Consequently, a judgment for $12,000 and costs was entered for Bryant against Partenreederei.[1]

Appealing from this judgment in his favor, Bryant contends that the specific remand by this court to the lower court on the first appeal precluded the lower court from considering the issue of contributory negligence; that even assuming the lower court could consider the issue the facts in the record do not support the finding made; and that the damages awarded him are grossly inadequate and inequitable.

■■ Even though an injured party's right of recovery is based on unseaworthiness, contributory negligence, if asserted in defense, presents an issue which must be resolved in granting relief since under the established admiralty rule a finding of contributory negligence is properly considered in mitigation of damages. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 429, 59 S.Ct. 262, 83 L.Ed. 265 (1939); The Arizona v. Anelich, 298 U.S. 110, 122, 56 S.Ct. 707, 80 L.Ed. 1075 (1936); The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586

(1890); Ross v. S. S. Zeeland, 240 F.2d 820 (4 Cir. 1957); Louviere v. Fidelity and Cas. Co., 210 F.Supp. 260 (W.D.La. 1962); Norris, Maritime Personal Injuries § 42 (1959). When this court remanded the case for the express purpose of determining damages at that stage of the proceedings the question of Bryant's contribution to his injuries by his own negligence, although raised, had not been resolved. The District Court in its earlier order had specifically refrained from ruling on the damages issue believing such a ruling unnecessary in view of its holding that Partenreederei was not liable to Bryant either on the theory of unseaworthiness or negligence. This court, as is clear from its opinion in 330 F.2d at 185, did not consider or discuss the issue. Under these circumstances we think the issue of contributory negligence was properly considered by the District Court in determining and awarding damages.

■ The computation of total damages sustained, though modest, is not clearly erroneous; but we think there is no foundation in the record for a finding of contributory negligence. Concededly, in attempting to hammer the board into place the appellant did only what other workers in similar circumstances did habitually. The District Court expressly found that the way in which Bryant was performing his work was not in any way different from the normal and customary manner in which such work was conducted; that it often became necessary for a man to stand on the hatch coaming to drive in the boards and that this was customary procedure in fitting precut grain board. This was not negligence, and to call it contributory negligence is tantamount to charging the plaintiff with assumption of risk under

1. In footnote 1, 330 F.2d at 186, this court noted that the District Court should consider on remand Partenreederei's claim for indemnity against Oriole Ship Ceiling Company, Incorporated, Bryant's employer, and Oriole's claim for indemnity against Bryant. Accordingly, the District Court as part of the present judgment appealed from, dismissed Oriole's claim against Bryant and by consent of the interested parties granted Partenreederei a claim against Oriole for the total amount of damages awarded to Bryant and costs. These holdings are not involved in this appeal.

another name. See Smith v. United States, 336 F.2d 165, 168 (4 Cir. 1964); Mason v. Mathiasen Tanker Industries, 298 F.2d 28, 31–33 (4 Cir. 1962). Applying the clearly erroneous rule, we conclude that a mistake has been committed in reducing by fifty per cent (50%) the estimated damages of $24,000. The judgment will be vacated and the case remanded for entry of a judgment not inconsistent with this opinion.

Remanded.

BOREMAN, Circuit Judge (dissenting):

Since I am unable to accept the majority view I respectfully file this note of dissent.

The majority opinion correctly states that contributory negligence, asserted in defense, presents an issue of fact which must be resolved in granting relief and a finding of contributory negligence is properly to be considered in mitigation of damages. On a prior appeal (330 F.2d 185), after this court determined liability based on unseaworthiness, the case was remanded with directions to enter judgment for Bryant in an amount *to be determined by the District Court*. As further stated by the majority, the District Court in its order which was the subject of the first appeal specifically refrained from considering the issue of damages and this court did not discuss it; the issue of contributory negligence was properly before the trial court in assessing damages.

Since McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954), an appellate court, in reviewing a judgment of a trial court sitting without a jury, is bound by the clearly erroneous rule applicable to factual findings in civil actions. See Prendis v. Central Gulf S.S. Co., 330 F.2d 893 (4 Cir. 1963). Whether a party plaintiff has been contributorily negligent is a question of fact to be decided by the trier of fact. Smith v. United States, 336 F.2d 165, 168 (4 Cir. 1964). The Supreme Court has made it clear that we should not disturb the District Court's finding unless, upon

review of the record, we are "left with a definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In the circumstances here I have no such conviction.

The lower court found that Bryant was negligent in selecting the unseaworthy board and in the manner in which he performed the operation of hammering the unseaworthy board into the stanchion slots. The evidence was uncontradicted that it was part of Bryant's job to select the boards to be used in constructing the feeder box; that many of the boards were interchangeable and as the feeder box had not been completed when Bryant chose the unseaworthy board there were several other suitable boards which he could have selected. The failure to notice the warped condition of the board would support the inference of negligence and the lack of ordinary care. Assuming, however, that the warped condition would not have been revealed by the exercise of ordinary care and prudence at the time he made his selection, by Bryant's own testimony the condition became obvious to him when the board was placed in the stanchion slots and one end of it did not drop into place. Bryant could have removed the board at this point but he and Austin chose to attempt to drive the board into the slot. Austin stood on the main deck and with a small board struck the warped board several blows with no results. These unsuccessful efforts of Austin were obvious to both him and Bryant. Then, rather than remove the warped board as he could have done, Bryant elected to drive it into place with a board heavier than the one Austin had been using while standing on the main deck. With the heavy board in hand Bryant climbed onto the twelve-inch wide coaming, three feet above the deck and the open hatch, and began striking the warped board with heavy blows to force it down into the slot. Still, the warped board resisted these strenuous efforts to drive it into place. While it was not unusual for ship ceilers to stand on the

coaming and hammer warped boards into place, from the evidence here the court could reasonably infer that Bryant, in his desperate effort to give the warped board "one last lick," recklessly and carelessly disregarded the precarious position in which he was working and threw caution to the wind. There was no foreign substance on the coaming which might have caused him to slip or lose his footing. Rather, it is clear from Bryant's testimony that in raising the heavy tamping board above his head to strike the hard blow, he became overbalanced from either hitting his head on the board or, as the evidence indicated, on what may have been and probably was the overhang of the deckhouse. The gang carrier, Taylor, testified that in his years as a ship ceiler he had never seen or heard of anyone being injured in the same way as was Bryant. Based on these facts I cannot say that the finding below that Bryant's own negligence proximately contributed to his injuries was clearly erroneous. I would affirm.