# Case No. 13,144.

### SNOW et al. v. CARRUTH et al.

[1 Spr. 324; [1] 19 Law Rep. 198.]

District Court, D. Massachusetts. May, 1856.

SET-OFF — ADMIRALTY — FREIGHT—DAMAGES—DECREE OVER—DIVIDING LOSS—BILL OF LADING.

1. In a suit by a carrier against a consignee, for freight, the consignee having made advances upon the consignment, and received the goods, may in defence. by way of recoupment, set up a claim for damages by the breach of his contract by the carrier.

[Cited in Kennedy v. Dodge, Case No. 7,701: Nichols v. Tremlett. Id. 10.247.]

[Cited in Dyer v. Grand Trunk Ry. Co., 42 Vt. 444.]

2. There is no general doctrine of set-off recognized in the admiralty.

[Cited in The Two Brothers. 4 Fed. 159: Gillingham v. Charleston Towboat & Transp. Co., 40 Fed. 650.]

3. And if a respondent set up a claim by way of recoupment, it can go only to diminish or extinguish the demand of the libellant.

[Cited in Ebert v. The Reuben Doud. 3 Fed. 522; The Tom Lysle, 48 Fed. 692.]

4. If the damage sustained by the respondent exceeds such demand, he can have no decree for the balance.

[Cited in Ebert v. The Reuben Doud, 3 Fed. 522.]

---

[1] [Reported by F. E. Parker. Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

---

[2] [From 10 Law Rep. 344.]

5. It is at his election whether to set up his claim in defence, or to file a cross libel therefor.

6. But if he set it up in defence, by way of recoupment, and his damages exceed the claim of the libellant, he will not be allowed to maintain a suit for the excess.

[See Bearse v. Ropes, Case No. 1,192.]

7. Where damage to goods is attributable partly to the fault of the carrier, and partly to the fault of the shipper, and it is impossible to ascertain for what proportion each is responsible, the loss will be equally divided between them.

[Cited in Christian v. Van Tassel, 12 Fed. 890; The Shand, 16 Fed. 572; The Tommy, 16 Fed. 608; The Max Morris, 24 Fed. 863; The Young America, 26 Fed. 176; The Dove, 91 U. S. 385; The Max Morris v. Curry, 137 U. S. 14, 11 Sup. Ct. 33.]

8. A carrier is liable for goods from the time they are shipped, although the bill of lading may be actually signed subsequent to the loss.

[Cited in The Edwin v. Naumkeag Steam Cotton Co., Case No. 4,301.]

By this libel, the owners of the ship John W. White, sought to recover of the respondents $653.63, for freight of 200 barrels of oil and 92 tierces of lard, brought from New Orleans to Boston, in the summer of 1854. There were two bills of lading, in one of which the respondents were the consignees, and the other had been assigned to them; and, on the whole consignment, they had advanced to nearly the value of the goods. On the arrival of the vessel at Boston, they received the goods, except as mentioned hereafter. The whole number of packages was delivered, but on gauging and weighing, it was found that 1,032 gallons (equal to 27 barrels,) of the oil, and 1,905 pounds of the lard had been lost by leakage. The respondents, not controverting the delivery of the packages, alleged a non-delivery of a part of said goods, and that the residue were not delivered in like good order and condition as when received; and also, that the libellants, after receiving said goods, or a part of them, (but before bills of lading were signed,) permitted them to lie upon the levee in New Orleans, for two days, exposed to the sun, whereby the casks were injured, and a loss by leakage caused. The libellants alleged due and proper care of the goods while in their possession.

H. A. Scudder, for libellants, claimed: 1st. That the respondents, as consignees, had not sufficient legal interest in the goods to maintain a claim for damages; that the contract for carriage was with the shippers; and that, until the respondents received the goods, there was no contract between them and the libellants, and that the cause of action, if any, accrued before that time. 2d. That no damages could be claimed, under a bill of lading, for injuries happening to goods prior to the date of such bill. 3d. That if the respondents had sufficient interest to maintain an action for damages, yet it could not be set up in defence, or by way of recoupment to the claim for freight. And to this point were cited, Abb. Shipp. 517; Davidson v.

Gwynne, 12 East, 381; Sheels v. Davies, 4 Camp. 119, 6 Taunt. 65.

Thomas H. Russell, for respondents, cited, as to the first point, that the contract was with the assignees; Abb. Shipp. 421. And upon the third point, Ben. Adm. § 41; Conk. Adm. 13, 15; 2 Pars. Cont. 427; Chit. Cont. 656; Hunt v. Otis Co., 4 Metc. [Mass.] 464; Moulton v. Trask, 9 Metc. [Mass.] 577; Farnsworth v. Garrard, 1 Camp. 38; Fisher v. Samuda, Id. 190; Basten v. Butter, 7 East, 479; 1 Scam. 463; 5 Watts, 446; 6 Watts, 435; Willard v. Dorr [Case No. 17,680]; Spurr v. Pearson [Id. 13,268]; Abb. Shipp. 427, 652, note, and cases cited; Curt. Merch. Seam. 305, 306.

SPRAGUE, District Judge, in deciding the cause, overruled the first objection. On the second point, he held that the liability of the carrier commenced with the receipt by him of the goods. The bill of lading acknowledges that the goods have been "shipped" prior to its date; it may have been several days prior; the obligation of the carrier begins at the time of the shipment, although the document, which is taken as the evidence of the reception and contract, may be of a subsequent date.

Upon the third point his honor said: There have been several cases in this court, in which this defence was set up and sustained, but in those cases, the counsel for the libellant did not raise the question, whether or not such defence could be legally made. The text-books cited by the libellants, seem to be full to the point, that it could not. The cases there cited in support of this doctrine, were Davidson v. Gwynne, 12 East, 381, and Sheels v. Davies, 4 Camp. 119, also reported 6 Taunt. 65. These were both decisions of the common law courts; and the earliest, that in 12 East, was not a case which decided the point for which it was cited. The question there, was upon the pleadings. The plaintiff having agreed, inter alia, to perform a certain voyage, and to sail with convoy, sued and alleged performance of the voyage, but did not allege a sailing with convoy. The pleadings were held sufficient. Another point was this: the plaintiff having alleged a delivery of the goods in like good order and condition as when received, and it appearing that certain chests of tea had been damaged by the negligence of the carriers, it was insisted, that the plaintiff could not recover his freight; but the court held that he might recover his freight, and that the defendant had his cross-action for his damages; but the question does not appear to have been raised, whether he might not also have his remedy by recoupment in the same suit.

The case in 6 Taunt. is an authority to the point for which it was cited by the libellant's counsel; but the common law courts of Massachusetts hold a different doctrine.

See acc. Sedg. Dam. (2d Ed.) p. 145. c. 17. This, too, is an admiralty court, which is not bound by the decisions of common law courts, in a question of remedy. No authority has been cited, that this defence will not be allowed by a court of admiralty. On the contrary, the language of Judge Story, in the case of Willard v. Dorr [supra], is broad enough to cover the defence, although not expressing it in terms. Considering the question upon principle, there seems to be no reason for not allowing this defence. The libellant claims under a contract for freight. The defence goes to the question how much, if anything, he ought to recover for services under that contract. The claim and the defence are on the same contract, and the evidence necessary in each may, to a considerable extent, be the same, as, for instance, on the question of the delivery of the goods by the libellant.

It is true, there is no general doctrine of set-off recognized in the admiralty; and if the damage to the respondent be greater than the whole freight, there can be no decree against the libellants for the excess. The respondents are not bound to resort to this mode of indemnity. They may have a cross-libel, if they so elect, and that must be the remedy, if they seek to recover more than the amount of the freight. If the respondents elect to set up the damages, by way of recoupment, in a suit against them, for freight, and the amount of the damages is greater than the amount of the freight, I should not sustain a new libel afterwards for the excess. See acc. Britton v. Turner, 6 N. H. 481; Fabbricotti v. Launitz, 3 Sandf. 743; Nichols v. Tremlett [Case No. 10,247]. To refuse to allow this defence, might cause much embarrassment to respondents, as in the case of a claim against a foreign ship, which may have left the port before the libel for freight is brought. To put the respondents to a cross-libel for damages in such a case, might be a denial of justice.

It is further to be observed, that this is a question of remedy, and not a question of right. It would lead to embarrassments, if different courts held different doctrines upon the rights of parties; but as to the question of remedies, each court will administer them according to its constitution and jurisdiction. I shall allow this defence. It has been proved, that there was negligence on the part of the ship; and that the respondents are entitled to recover some damages. A more difficult question is, to what amount. It appears from the evidence, that some loss would necessarily attend the transportation of those articles, at that time of the year. I am satisfied, that the great loss in this case, (above the necessary leakage,) was partly attributable to the negligence of the carrier, and partly to the negligence or misfortune of the shipper or consignee, and that it is not practicable to ascertain for how much of the loss the one party, or the other, is, in fact, responsible. I am, therefore, obliged to adopt some arbitrary rule in determining the amount to be allowed the respondents. An analogy may be found in the rule adopted by courts of admiralty, in cases of collision, when both parties are in fault. In such cases, the aggregate amount of the damages is divided equally between the parties.

Let the decree be made up by deducting for the ordinary leakage, two gallons per barrel, and three pounds per tierce. And deduct from the amount of the freight one-half of the residue of the loss; and each party is to pay one-half of the aggregate costs.