GEORGE D. EMERY CO. v. TWEEDIE TRADING CO.

TWEEDIE TRADING CO. v. GEORGE D. EMERY CO.

(District Court, S. D. New York. December 19, 1905.)

1. ADMIRALTY—SET-OFF—MATTERS ARISING OUT OF INDEPENDENT TRANSACTIONS.
    Matters arising out of independent transactions not connected with the transaction upon which the suit was brought cannot be pleaded as a set-off in admiralty.
    [Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, § 327.]

2. SAME—CROSS-LIBEL—MATTERS CONSTITUTING COUNTERCLAIM.
    New and distinct matters, not included in the original libel, but arising out of separate transactions, cannot be made the subject-matter of a cross-libel in admiralty, which must be confined to matters arising out of the same maritime transaction for which the original action was brought.
    [Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, § 330.]

In Admiralty. On exceptions to answer and cross-libel.

Convers & Kirlin and John M. Woolsey, for George D. Emery Co.
Wheeler, Cortis & Haight, for Tweedie Trading Co.

ADAMS, District Judge. The original action herein was brought by the George D. Emery Company against the Tweedie Trading Company to recover a balance of hire of the steamship Osceola for a half month from April 3, 1905, amounting to, less conceded deductions, $1,209.35.

The respondent in its answer after some denials and claims, alleged:

"Seventh. Further answering the libel herein the respondent alleges that the Steamship Osceola arrived at the port of New York on or about the 10th day of April, 1905, and was there detained at quarantine for one day and nineteen and one-half hours by reason of the sickness of the crew of said steamer, which constituted 'a deficiency of men,' and the respondent is entitled to deduct from the hire the time so lost, which at the rate agreed upon in the charter party amounted to $272.61. The respondent further disbursed for account of said steamer at the port of New York the sum of $95.46. These sums were disbursed at the request of the master of said steamer and were made while the hire of said steamer was suspended under the provision of the charter party, and were properly chargeable to the owners.

"Eighth. Further answering the libel herein, the respondent alleges that it advanced and disbursed to the master of said steamer the sum of $1300.44 for necessary supplies for said steamer. These sums were advanced and disbursed at the request of the master of said steamer and constitute a lien on said steamer and are properly chargeable to the owners thereof.

"Ninth. Further answering the libel herein the respondent alleges that on or about the 9th day of December, 1903, a charter party was entered into between the libelant and respondent, whereby the libelant agreed to load on the steamer Myrtledene a full and complete cargo of mahogany logs at Belize for transportation to Boston.

"The libelant wrongfully failed to perform the obligations imposed upon it by said charter and failed and refused to load the cargo contracted for, by reason of which breach of the charter the respondent has sustained damages to the amount of Three thousand dollars ($3000), payment of which has been demanded and refused. The respondent performed all the obligations and stipulations of said charter party on its part to be performed."

The respondent also filed a cross libel seeking to recover thereby the sums $272.61 and $95.46, alleged in the 7th paragraph of the answer and the further sum of $3,000 for damages for breach of charter of the Myrtledene as above stated.

The libellant thereupon filed the following exceptions to the answer:

"First. It excepts to the following allegation contained in the seventh article of the answer:

"'The respondent further disbursed for account of said steamer at the port of New York, the sum of $95.46. These sums were disbursed at the request of the master of the said steamer and were made while the hire of the said steamer was suspended under the provision of the charter party, and were properly chargeable to the owners.'

"On the ground that it is impertinent, and irrelevant in an action between the George D. Emery Company, which was the charterer of the Steamship Osceola, and the Tweedie Trading Company, the sub-charterer.

"Second. It excepts to all the allegations contained in the eighth article of the answer on the ground that it is impertinent and irrelevant, in an action between the George D. Emery Company, which was the charterer of the steamship Osceola, and the Tweedie Trading Company, the sub-charterer.

"Third. It excepts to the allegations in the ninth article of the answer on the ground that they are not a part of the controversy for which the libel was brought, and hence cannot properly be appealed as matter of set-off thereto."

The libellant also filed exceptions to the cross libel as follows:

"First. Because the matters alleged in the second and third articles of the so-called cross-libel are not matters involved in the original libel, and therefore not properly to be included in any cross-libel filed thereto.

"Second. Because the matters alleged in the fourth, fifth and sixth articles of the so-called cross-libel have already been pleaded in the answer to the original libel of the George D. Emery Company against the Tweedie Trading Company, and do not constitute a claim for affirmative relief, and, hence, are not properly pleaded as part of a cross-libel."

It is admitted by the cross libellant that, as under the rules of the court, a cross libel can only be brought where the claim is in the nature of a counterclaim, that the first exception is good and should be sustained. The remaining exceptions will now be considered.

### To the Answer.

1st and 2d. The difficulty about these exceptions is, that they proceed upon the theory that the Emery Company was simply the charterer of the ship and the Tweedie Company the sub-charterer. In fact, as appears by the contract, the Emery Company was the chartered owner. It was provided:

"It is understood that where the word 'owners' appears in this charter it refers to George D. Emery Co. and where word 'charterers' or 'sub-charterers' appears it refers to Tweedie Trading Co.

"I. That the owner shall provide and pay for all provisions, wages, and Consular shipping and discharging fees of the Captain, Officers, Engineers, Firemen and Crew; shall pay for the insurance of the vessel, also for all the cabin, deck, engine room, and other necessary stores, and maintain her in a thoroughly efficient state in hull and machinery for and during the service."

Under these circumstances, it does not seem that any further discussion is required. The Emery Company was required to pay these charges and if the Tweedie Company paid them it was manifestly for the account of the former, from whom it is entitled to reimbursement in this action.

Exceptions overruled.

3d. The question is raised here as to the right of the Tweedie Company to set off the damages it claims to have sustained by reason of the Myrtledene. The argument of the Tweedie Company in this connection is that an independent transaction may be set off and The C. B. Sanford (D. C.) 22 Fed. 863, cited in support thereof. That authority does undoubtedly support the claim but it has not been followed. The better doctrine is, that such set-offs do not fall within the jurisdiction of the court. Willard v. Dorr, Fed. Cas. No. 17,680; American Steel Barge Co. v. Chesapeake & O. Coal Agency Co., 116 Fed. 857, 54 C. C. A. 207; Davidson v. Green (D. C.) 127 Fed. 999; Hastorf v. Degnon-McLean Contracting Co. (D. C.) 128 Fed. 982.

Exception sustained.

### To the Cross Libel.

The undisposed of exception to the cross libel presents the question of what can be set up in this way. The Tweedie Company urges the hardship it will be subjected to if not permitted to proceed with its claim with respect to the Myrtledene, and the Emery Company claims

that the rules of law prevailing in this court only allow the prosecution of claims arising out of the same maritime transaction for which the original libel was brought. The latter claim seems to be the sound one. Mr. Justice Clifford, in writing for the Supreme Court, in The Dove, 91 U. S. 381, 385, 23 L. Ed. 354, said:

"Whether the controversy pending is a suit in equity or in admirality, a cross-libel, or libel is a bill or libel brought by a defendant in the suit against the plaintiff in the same suit or against other defendants in the original suit or against both, touching the matters in question in the original bill or libel. It is brought in the admirality to obtain full and complete relief to all parties as to the matters charged in the original libel; and in equity the cross bill is sometimes used to obtain a discovery of facts.

"New and distinct matters, not included in the original bill or libel, should not be embraced in the cross suit, as they cannot be properly examined in such a suit, for the reason that they constitute the proper subject-matter of a new original bill or libel. Matters auxiliary to the case of action set forth in the original libel or bill may be included in the cross-suit, and no others, as the cross-suit is, in general, incidental to, and dependent upon, the original suit. Ayers v. Carter, 17 How. 595 [15 L. Ed. 179]; Field v. Schieffelin, 7 Johns. Ch. 252; Shields v. Barrow, 17 How. 145 [15 L. Ed. 158]."

Of course, it is not intended hereby to limit the authority of the court to inquire into all the breaches of any maritime contract which may be the subject of action and all the damages suffered thereby, however peculiar they may be and whatever issues they involve. The Electron (D. C.) 48 Fed. 689.

Exception sustained.